**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| K.B. by and through his parent, S.B., | : | |
| | : | |
| and | : | |
| | : | |
| S.B. individually and on her own behalf, | : | |
| all of Middletown, Delaware | : | |
| | : | |
| Plaintiffs | : | Civil Action |
| | : | |
| v. | : | No. |
| | : | |
| APPOQUINIMINK SCHOOL DISTRICT | : | Jury Trial Demanded |
| 313 South Fifth Street, | : | |
| Odessa, Delaware, 19730; and | : | |
| | : | |
| CHRISTINA SCHOOL DISTRICT | : | |
| 1899 South College Avenue | : | |
| Newark, Delaware, 19702 | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT**

## I.    Introduction

1.    This civil action results from the physical, emotional, and psychological abuse and neglect of one of the most vulnerable children in the Defendant Appoquinimink School District ("Appoquinimink") who received special education services at the Brennen School ("Brennen"), which is the Delaware Autism Program for students in New Castle County and is operated by Christina School District ("Christina") which also provided his transportation. Together, Appoquinimink, which was responsible for his special education programming, and Christina, which operated the educational program and transportation, abused, harmed, and neglected Plaintiff K.B., ("K.B." or "Plaintiff") and violated his federally- and state-protected rights as an individual with disabilities.

1

2.     Plaintiff K.B. ("K.B." or "Plaintiff") is a now 11-year-old child with severe disabilities, including Autism and Intellectual Disability. He functions cognitively in the <0.1 percentile.

3.     During the 2023-24 school year when K.B. was only eight years-old, staff responsible for his care employed by and/or contracted by the Defendants Appoquinimink and Christina (together, "Defendants") physically, psychologically, and emotionally abused and neglected K.B.

4.     All of the abuse described herein occurred during K.B.'s school day and by the Defendants' employees or agents.

5.     K.B. is nonverbal, has severe receptive and expressive language impairment, and thus could not plead for help or tell his parent that he was being abused.

6.     Board Certified Behavior Analysts and behavior therapists working with K.B. (in a separate program, Hybridge Learning Group ("Hybridge"), that was not run by Defendants) who were responsible to get K.B. off the bus after school found him on multiple occasions showing clear indications of abuse and/or neglect, such as being covered with feces, urine, and vomit; and completely unclothed from the waist down without explanation.

7.     Plaintiff S.B. is K.B.'s parent. She too would find unexplained bruises and marks on K.B. after school.

8.     S.B. only learned about the disturbing abuse and neglect through K.B.'s independent behavior staff and by finding marks on his body.

9.     The Defendants took no appropriate, timely action to prevent or stop the abuse and neglect, or to properly hire, train, and supervise staff working with K.B. to prevent such ongoing abuse and neglect by teachers, staff, and agents all in violation of Section 504 of the Rehabilitation

2

Act of 1973 ("Section 504"), 29 U.S.C. § 794, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131; the Equal Protection Clause of the Fourteenth Amendment; the Substantive Due Process Clause of the Fourteenth Amendment; and Delaware law.

10. This action is brought by the Plaintiffs against the Defendants for the deliberate indifference to the physical, emotional, and psychological abuse and neglect resulting in a denial of benefits and discrimination under Section 504 and the ADA; and pursuant to Section 1983 to enforce the protections of the ADA, the Equal Protection Clause, and the Substantive Due Process Clause. The Plaintiffs also bring claims of negligence and gross negligence against the Defendants under Delaware law. In addition, the Complaint asserts a Loss of Consortium claim against the Defendants for the Parent Plaintiff who has lost the companionship of and relationship with her child.

## II.    Parties

11. At all times relevant to this Complaint, all Plaintiffs resided within the Appoquinimink School District and within the District of Delaware.

12. The Appoquinimink School District was the Local Education Agency responsible for K.B.'s education at all times relevant to the Complaint and is located at 313 South Fifth Street, Odessa, Delaware, 19730, which is within the District of Delaware.

13. The Christina School District staffs, operates, and supervises Brennen and provided the transportation for K.B. to and from Brennen; it is located at 1899 South College Avenue, Newark, Delaware, 19702, which is within the District of Delaware.

14. The Defendants are both recipients of several sources of federal funds.

15. The Defendant Appoquinimink School District is and was responsible for providing special education and related services to all eligible children within its borders and is the school

3

entity responsible for providing the Plaintiff with a safe, appropriate, and comprehensive educational program.

16.    It is responsible for honoring the substantive and procedural rights of eligible children and their parents under Section 504, the ADA, the United States Constitution, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and Delaware law.

17.    The Defendant Appoquinimink School District is a public entity responsible for compliance with the guarantees of Title II of the ADA. 42 U.S.C. § 12132.

18.    The Defendant Christina School District is responsible for administering services of the state's Delaware Autism Program through the Brennen School.

19.    It is responsible for honoring the substantive and procedural rights of eligible children and their parents under Section 504, the ADA, the United States Constitution, and Delaware law.

20.    The Defendant Christina School District is a public entity responsible for compliance with the guarantees of Title II of the ADA. 42 U.S.C. § 12132.

## III.    Jurisdiction and Venue

21.    This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case raises federal questions under Section 504, the ADA, the United States Constitution, and Section 1983. This Court has supplementary jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(a). The amount in controversy, exclusive of interest and costs, exceeds $150,000.

22.    Plaintiffs are not required to exhaust administrative remedies pursuant to Individuals with Disabilities Education Act claims (20 U.S.C. § 1400 et seq.) to pursue this Civil

Action, as none of the relief sought is available in any manner in administrative proceedings.

23.     Defendants' actions have taken place within the jurisdiction of the United States District Court for the District of Delaware.

24.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391.

## IV.     Applicable Law

### A.     Discrimination and Denial of Benefits under Section 504

25.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits the exclusion of, or discrimination against, "handicapped persons" in federally funded programs. Plaintiff K.B. is such a "handicapped person" as he is a person with disabilities.

26.     To state a claim under Section 504, a plaintiff must allege facts showing that: (1) he is an "individual with a disability" as defined under the statute; (2) he is "otherwise qualified" for participation in the program or the benefit denied; (3) the program receives "federal financial assistance;" and (4) he was "excluded from the participation in," "denied the benefits of," or "subjected to discrimination" in the program "solely by reason of her or his disability." *Id.*

27.     Compensatory damages are available for a Section 504 or ADA violation when the defendant's conduct demonstrates deliberate indifference. *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018).

28.     Deliberate indifference is "knowledge that a federally protected right is substantially likely to be violated," and that the defendant "fail[ed] to act despite that knowledge." *S.H. ex rel. Durrell v. Lower Merion School Dist.*, 729 F.3d 248, 265 (3d Cir. 2013). The failure to act in the face of the requisite knowledge involves "a deliberate choice, rather than negligence or bureaucratic inaction," but it "does not require a showing of personal ill will or animosity toward the disabled person." *Id.* at 263 (internal quotations omitted).

29.    Notably, a plaintiff "need not establish that there has been an intent to discriminate in order to prevail under Section 504." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1384 (3d Cir. 1991). Rather, in addition to the above standard to establish liability, the plaintiff "'may circumstantially allege that [the student] was discriminated against . . . by alleging facts that could be interpreted to show bad faith or gross misjudgment.'" *Beam v. Western Wayne School District*, 165 F. Supp. 3d 200, 211 (M.D. Pa. 2016).

30.    "The Third Circuit has held that the inadequacy of training may itself serve as the basis for liability where it amounts to 'deliberate indifference.'" *Susavage v. Bucks County Schools Intermediate Unit No. 22*, 2002 WL 109615 at *7 (E.D. Pa. Jan. 22, 2002) (citing *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)).

31.    Recovery is available under Section 504 and the ADA where entities charged with the care of persons with disabilities fail to properly provide or supervise that care. *Ebonie S. v. Pueblo Sch. Dist. 60*, 2015 WL 4245831 at *1 (D. Colo. 2015) (family awarded $2.2 million in damages and an additional $900,000 in attorney's fees for Section 504 and ADA claims where the school district caused emotional distress to a special needs kindergartener by frequently using a "wrap-around" desk, which functioned essentially like a cage); *Lawton v. Success Acad. of Fort Green*, 2021 WL 911981 at *2-*3 (E.D.N.Y. 2021) (charter school subjected five-year-old students to overly harsh discipline, including excluding them from school and calling the police; although students were not physically injured, five plaintiffs accepted an offer of judgment of $1.1 million; court awarded $1.3 million in fees); *Snell v. North Thurston School District*, 2015 WL 8621913 at *1, *4 (W.D. Wash. 2015) (awarding $35,000 in damages to the child and $93,606.30 in attorney's fees and costs for failing to provide child with insulin).

32.    Both Appoquinimink and Christina are federally-funded programs charged with the

6

care and education of K.B. that have failed to properly provide or supervise that care, resulting in injury to K.B. and subjecting him to discrimination.

### B.    Discrimination under the ADA

33.    Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff K.B. is such an individual with disabilities.

34.    Section 12132 of the ADA "extends the nondiscrimination rule of [Section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)." *Jeremy H. v. Mount Lebanon School Dist.*, 95 F.3d 272, 279 (3d Cir. 1996).

35.    The ADA's causation standard is lower than Section 504 and does not require the disability to be the "sole cause" of the discrimination or denial of benefits; rather "the ADA only requires 'but-for' causation," i.e., but for the disability, there would be no discrimination or denial of benefits. *Furgess v. Pa. Dep't. Of Corr.*, 933 F.3d 285, 291 n.25 (3d Cir. 2019).

36.    Both Appoquinimink and Christina are public entities charged with the care and education of K.B. that have failed to properly provide or supervise that care, resulting in injury to K.B. and subjecting him to discrimination by excluding from participation in or denying the benefits of the services, programs or activities by reason of his disability.

### C.    Section 1983 Claim for Deprivation of Rights Secured by the ADA

37.    "[A]ny person within the jurisdiction of the United States may invoke . . . [a Section 1983 claim] against any other person who, acting 'under color of' state law, has deprived them of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. 166, 175, 143

S. Ct. 1444, 1452 (2023) (citing 42 U.S.C. § 1983).

38.     "Section 1983 can presumptively be used to enforce unambiguously conferred federal individual rights, unless a private right of action under § 1983 would thwart any enforcement mechanism that the rights-creating statute contains for protection of the rights it has created." *Id*. at 171 (citing *inter alia Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, 253-55, 129 S. Ct. 788, 794-95 (2009)).

39.     Where a statute "has no administrative exhaustion requirement and no notice provisions" a party may bring a Section 1983 claim against the state actor even if the statute permits a private right of action for compensatory damages and equitable relief. *Fitzgerald*, 555 U.S. at 255, 129 U.S. at 795-96.

40.     Furthermore, the Supreme Court's recent decision in *Talevski*, *supra*, expands the use of Section 1983 and permits the Plaintiffs to bring a Section 1983 claim to enforce the ADA against the Defendant.

41.     Under the *Talevski* framework, a Section 1983 action can be used to enforce the ADA against a state actor because: (1) Congress did not intend the ADA to be the "exclusive avenue" to enforce the rights of people with disabilities; (2) an action under the ADA is not "more restrictive" than a Section 1983 claim; (3) a Section 1983 claim is not "incompatible" with an ADA claim; and (4) a Section 1983 claim would not thwart an ADA claim. *See Talevski*, 599 U.S. at 171, 187-88, 143 S. Ct. at 1450, 1459-60.

42.     Both Appoquinimink and Christina are subject to 1983 actions to enforce the ADA.

**D.     Section 1983 Claim to Enforce the Equal Protection Clause for Repeated Abuse and Neglect of a Child with Disabilities**

43.     The Equal Protection Clause requires that the law treat similarly situated people alike. *Vicky M. v. Northeastern Educational Intermediate Unit 19*, 486 F. Supp. 2d 437, 457 (M.D.

Pa. 2007) (citing U.S. Const. Amend. XIV, § 1; *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249 (1985)).

44.    A child with a disability may raise an Equal Protection Clause claim based on a special education teacher's abuse of children with disabilities. *Vicky M.*, 486 F. Supp. 2d at 457. "[A]t this stage [p]laintiffs need only . . . plead that a state actor had an intent to disadvantage all members of a class that includes [an individual] . . . [p]laintiff." *Id*. (citing *Crawford–El v. Britton*, 523 U.S. 574, 592, 118 S. Ct. 1584 (1998)). An Equal Protection Clause claim is appropriate where "[p]laintiffs have alleged that [the] [d]efendant . . . repeatedly discriminated against the [m]inor[s] and other autistic students in her class by inflicting physical and emotional abuse upon them but did not so discriminate against her other special education students." *Id*.

45.    A plaintiff must show that there was no rational basis for the state action to treat plaintiff differently because of his or her disability.

46.    Both Appoquinimink and Christina School District are subject to suit to enforce K.B.'s Equal Protection rights as state actors that have deprived him of his constitutional rights with no rational basis to treat K.B. differently because of his disability.

### E.    Section 1983 Claim for a Violation of Substantive Due Process Arising from Unlawful Corporal Punishment

47.     Excessive corporal punishment is actionable under the substantive component of the Due Process clause. See *Ingraham v. Wright*, 430 U.S. 651, 97 S. Ct. 1401 (1977); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000); *Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903 (11th Cir. 2003); *Hatfield v. O'Neill*, 534 F. App'x. 838 (11th Cir. 2013).

48.    To state a substantive due process claim, the student's allegations of excessive

corporal punishment must "rise to the level of arbitrary and conscience-shocking behavior." *Neal*, 229 F.3d at 1075.

49.     Both Appoquinimink and Christina School District are subject to suit to enforce K.B. Substantive Due Process rights as state actors that have subjected him to excessive corporal punishment.

**V.     Factual Background**

50.     The Plaintiffs incorporate by reference all paragraphs of this Complaint.

51.     K.B. is an 11-year-old fifth grader living in Appoquinimink School District.

52.     K.B. has been diagnosed with Autism and Intellectual Disability.

53.     K.B.'s cognitive functioning is in the <0.1 percentile (severely delayed).

54.     K.B. is nonverbal and has severe language impairment.

55.     K.B. requires significant adult support and supervision because he lacks basic safety skills like being able to safely chew and swallow food without adult supervision.

56.     From pre-K until the end of the 2023-24 school year, he attended Brennen, an educational program recommended and funded by the Appoquinimink School District and staffed, operated, and supervised by the Christina School District.

57.     K.B.'s IEPs that were implemented throughout his time at Brennen were developed by a team of Christina School District staff members and at least one Appoquinimink School District representative. Appoquinimink School District then offered the IEP to K.B. and his parent via a Prior Written Notice ("PWN") as its offer of a Free Appropriate Public Education.

58.     While enrolled in Appoquinimink and receiving special education programming operated by Christina, K.B.'s mother repeatedly raised concerns for K.B.'s safety with both Appoquinimink School District administration, particularly Christine Brown and Kelly Foltz, and

Christina School District Brennen personnel, particularly Heather Calkins and Brian Brice.

59.    According to the Appoquinimink School District's evaluations, K.B. has a nonverbal IQ of 47 and extremely low adaptive skills on both parent and teacher ratings (relating to his abilities to complete activities of daily living and other basic life skills).

60.    K.B.'s evaluations revealed significant communication, gross motor, and sensory needs.

61.    The Defendants have long known of significant safety concerns for K.B. that require a high degree of supervision and training for individuals working with K.B.

62.    In 2021, K.B.'s behavior plan—developed by Appoquinimink and implemented by Christina School District staff—explained that he exhibits unsafe darting behaviors such as running unpredictably and fast. The Brennen team was supposed to keep him in arm's reach in hallways and during transitions and was also supposed to block the exit from the playground area.

63.    In 2021, the Appoquinimink IEP team added a Safety Vest Fade Plan to K.B.'s Behavior Improvement Plan to address K.B.'s behavior of wiggling out of a seat belt during transportation. The plan outlines a specific progression of how the safety vest needs to be latched and when, based on the behaviors K.B. was displaying.

64.    Christina School District staff/contractors, who provided K.B.'s transportation, were responsible to review and implement the plan.

65.    In 2022, the Christina School District conducted a Functional Behavioral Assessment ("FBA") of K.B. which assessed his tantrums and monitored his darting behaviors.

66.    In 2022, K.B.'s IEP team, including Christina staff/contractors and a representative from Appoquinimink, documented that K.B.'s oral, motor, sensory and behavioral difficulties may make mealtimes unsafe for him. It is also noted that "[K.B.] is felt to be at a high risk of choking."

67. In 2023, the Christina team conducted another FBA, again addressing his tantrum and darting behaviors, and additionally assessing a self-gagging behavior. This FBA was incorporated into K.B.'s IEP.

68. The IEP team also continued with a Bus Safety Plan/Safety Vest Fade Plan to address his wiggling out of seatbelt behavior while on the bus.

69. Again in 2024, the IEP team had the same safety concerns for K.B and it documented that "K.B. exhibits significant safety concerns during the majority of his school day…."

70. Despite clear notice that K.B. has significant health and safety needs related to his disabilities, the Defendants failed to appropriately train staff, supervise K.B. and upon information and belief physically, emotionally, and psychologically harmed K.B. due to its actions and inactions.

71. K.B. was eight and nine years old during the 2023-24 school year when upon information and belief he was negligently supervised and abused during his school day.

72. Despite knowledge that K.B. requires a high degree of adult supervision from trained staff, the Defendants and/or their contractors/agents, upon information and belief, abused and neglected K.B. as evidenced by clear signs of mistreatment that were observed on multiple occasions by behavioral staff from Hybridge (which is not a program provided by the Defendants) who were responsible for getting K.B. off of the bus after school.

73. Board Certified Behavior Analysts and Behavior Technicians from Hybridge documented several instances of K.B. getting off the bus with clear signs of injuries, abuse and neglect.

74. Several times the Parent reported unexplained bruises and scratches and rips in his

clothing to the Defendants and/or their contractors/agents.

75.    On or around September 12, 2023, the Parent reported via an email to Brian Brice, a teacher at Brennen, that K.B. was coming home with different scratches on his back and arms every day and that he twice came home with a ripped shirt. Parent questioned whether anyone was roughly handling K.B. at school. The Parent said that K.B. also had unexplained physical injuries from the previous school year. She stated in the email that once she began inquiring about the marks on K.B. the previous school year, she no longer found marks on him any longer.

76.    The Brennen school nurse evaluated K.B. on September 12, 2023, and confirmed the presence of bruises on his back.

77.    On September 28, 2023, Hybridge staff noticed K.B. come off the bus with an unexplained red spot on his nose.

78.    On October 3, 2023, a Hybridge Behavior Technician reported that K.B. came off the bus soaked in urine through his diaper. K.B.'s Parent contacted Brian Brice again.

79.    On February 15, 2023, the driver informed Hybridge that K.B. was sick all day— he was tired and registered a fever—and yet no one from either Appoquinimink or Christina contacted his Family. Hybridge called the Family who came to pick him up.

80.    On March 5, 2024, K.B. was seen at the nurse's office at school at 12:11 PM for vomiting and noted to have "some wet spots on sweatshirt and jeans." K.B. was sent back to class. K.B. continued to refuse to eat that afternoon demonstrating that he remained ill; the Brennen staff failed to respond.

81.    On March 26, 2024, K.B. came off bus with no shoes, socks, pants, underwear, or pullup on—no covering at all from the waist down. He was also covered in feces from head to toe which was on him so long it had crusted over. He was visible, unclothed, to multiple individuals.

82. K.B.'s skin was irritated due to the feces.

83. On April 16, 2024, K.B. came off the bus with his pants soaked in urine through his pull up.

84. On April 17, 2024, K.B. again came off the bus soaked in urine.

85. In May 2024, Parents notified Christina School District of an unexplained bruise on K.B.'s arm and neck.

86. On May 20, 2024, K.B. came off the bus covered in vomit.

87. On June 6, 2024, K.B. again came off the bus covered in vomit.

88. On June 10, 2024, K.B. came off the bus with his pants soaked in urine.

89. While at Brennen, K.B. consistently engaged in potentially dangerous behaviors such as self-gagging, elopement/darting, wiggling out of his seatbelt, and over-stuffing his mouth and swallowing food whole.

90. Many of these behaviors increased during tantrums.

91. Defendants were both aware of K.B. potentially dangerous behaviors from his IEPs, which were developed by both Christina and Appoquinimink together and which include his FBAs and bus safety plans.

92. Additionally, K.B. frequently came home from Brennen with damaged clothes and shoes, and unexplained cuts, bruises, and marks on his body.

93. During the 2023-24 school year, he often vomited after school, and his vomit contained large chunks of food, indicating that he had not been properly supervised while eating.

94. On one occasion, K.B. was kicked in the head on the bus and the Defendants both failed to notify his mother for several days.

95. K.B. required a high degree of supervision from trained staff to keep him safe.

14

96.     After repeatedly being told there was no other school for K.B. to attend and seeing no meaningful changes at Brennen to address her concerns, K.B.'s mother withdrew him as she did not feel it was safe for him to return to Brennen.

97.     K.B. was homeschooled with substantial Applied Behavior Analysis ("ABA") support from Hybridge for most of the 2024-25 school year.

98.     In his homeschool program with support from Hybridge, K.B. made progress.

99.     Since leaving Brennen, K.B. has not vomited, his mother has stopped finding unexplained marks on his body, and there have been no unexplained incidents of him being soiled by bodily fluids or excrement.

100.     However, K.B. should be in school with peers, and therefore his mother reenrolled him in Appoquinimink and is seeking appropriate programming through separate administrative procedures that do not impact this action.

## VI.    Claims

### Count I
### Discrimination and Denial of Benefits under Section 504

### (K.B. v. all Defendants)

101.     Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

102.     At all relevant times, the Defendants received federal financial assistance from several sources.

103.     K.B. is a handicapped person, i.e., disabled, under Section 504.

104.     Despite his disabilities, at all times relevant to this Complaint, K.B. was otherwise qualified to attend an educational program and placement provided by the Defendants with appropriate special education programming, safe conditions, related services, accommodations,

and supplemental supports for purposes of Section 504.

105.    At all times relevant to this Complaint, Defendants knew of K.B.'s disabilities and associated needs as described in this Complaint.

106.    Plaintiffs believe and therefore aver that the Defendants discriminated against K.B. on the basis of his disabilities and denied him the equal benefits of their educational program, by failing to provide him with a safe, appropriate, and properly supervised educational program with properly hired, trained, and supervised educational professionals where he would be free from physical, psychological, emotional, and verbal abuse and trauma.

107.    The Defendants had the duty and responsibility to ensure that K.B.'s educational program was safe, appropriate, and properly supervised with properly hired, trained and supervised staff.

108.    The Defendants were aware of K.B.'s significant safety needs that are due to his disabilities and failed to meet them.

109.    K.B. would not have been subjected to these injuries alleged in this Complaint if he had not been disabled.

110.    Defendants deprived K.B. of the equal benefits of his educational program, and otherwise subject to discrimination, because of his disabilities.

111.    The Defendants acted with deliberate indifference, bad faith, and/or gross misjudgment and violated K.B.'s rights secured by Section 504. 29 U.S.C. § 794; 34 C.F.R. §§ 104.4 and 104.7.

112.    As a direct and proximate result of Defendants' violations of Section 504 as set forth above, K.B. was injured, and has suffered physical, mental, psychological, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation,

16

educational harm and loss, and loss of life's most basic pleasures. Plaintiffs have incurred and will continue to incur physical, mental, emotional, and behavioral harm, monetary loss, medical/treatment bills, humiliation, and are entitled to monetary damages stemming from the injuries they have suffered due to Defendants' violations of Section 504.

113.   As a result of these violations, K.B. continues to suffer injuries and damages, including physical injuries, as described herein.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, attorney's fees, costs, and such other and further relief as this Court deems just and proper.

### Count II
### Discrimination and Denial of Benefits under the ADA

### (K.B. v. all Defendants)

114.   Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

115.   The requirements for a claim under the ADA are like Section 504, except that under the ADA, a plaintiff's disability need be only one factor in causing the denial of benefits or discrimination at issue and a lower standard of causation is applicable. *See* 29 U.S.C. § 794(a); *see also* 42 U.S.C. § 12132; *Helen L. v. DiDario*, 46 F.3d 325, 330 n.7 (3d Cir. 1995); *Furgess*, 933 F.3d at 291 n.25.

116.   As set forth above, Defendants violated Section 504; thus, Defendants also violated the ADA.

117.   Defendants are public entities and/or instrumentalities or agents of the state responsible for compliance with the guarantees of Title II of the Americans with Disabilities Act.

118.   K.B. is a handicapped person, i.e., disabled, under the ADA.

119. At all times relevant to this Complaint, Defendants knew of K.B.'s disabilities and associated needs as described in this Complaint and the significant needs stemming from those disabilities.

120. Despite his disabilities, at all times relevant to this Complaint, K.B. was otherwise qualified to attend an educational program and placement provided by the Defendants with appropriate special education programming, safe conditions, related services, accommodations, and supplemental supports for purposes the ADA.

121. Plaintiffs believe and therefore aver that the Defendants discriminated against K.B. on the basis of his disabilities and denied him the equal benefits of his educational program by failing to provide him with a safe, appropriate, and properly supervised educational program where he would be free from harm.

122. The Defendants had the duty and responsibility to ensure that K.B.'s educational program was free of abuse and harassment at school and that he was not subjected to a hostile educational environment, and that he possessed the self-advocacy skills needed to respond to abuse and harassment.

123. But for K.B.'s disabilities, he would not have been subjected to these injuries alleged in this Complaint.

124. K.B.'s disabilities were a contributing factor and/or one of the causes of injuries described in this Complaint.

125. K.B. was deprived of the equal benefits of his educational program and otherwise subject to discrimination, because of his disabilities.

126. Defendants violated K.B.'s rights secured by the ADA and 28 C.F.R. § 35.130 by its actions and inactions which: (a) subjected him to discrimination, in violation of 28 C.F.R.

§ 35.130(a); and (b) limited him in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

127.    The Defendants acted with deliberate indifference, bad faith, and/or gross misjudgment and/or violated K.B.'s rights secured by the ADA.

128.    As a direct and proximate result of Defendants' violations of the ADA as set forth above, K.B. was injured, and suffered physical, mental, psychological, and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, educational harm and loss, and loss of life's most basic pleasures. Plaintiffs have incurred and will continue to incur physical, mental, emotional, and behavioral harm, monetary loss, medical/treatment bills, humiliation, and are entitled to monetary damages stemming from the injuries they have suffered due to Defendants' violations of the ADA.

129.    As a result of these violations, K.B. continues to suffer injuries and damages, including physical injury, as described herein.

WHEREFORE, Plaintiffs demand judgment in their favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, attorney's fees, costs, and such other and further relief as this Court deems just and proper.

**Count III**
**42 U.S.C. § 1983 Claim for Enforcement of the ADA**

**(K.B. v. all Defendants)**

130.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

131.    Defendants are municipal entities and/or state actors subject to suit pursuant to 42 U.S.C. § 1983.

132.    There existed a close nexus between the State and the actions of the Defendants and its agents such that the behavior of the Defendants and its agents may be fairly treated as that of the State. The Defendants and their agents exercised powers that are traditionally the exclusive prerogative of the state; acted with the help of or in concert with state officials; and/or acted in a position of interdependence with the State such that it must be recognized as a joint participant in the education and abuse of the Plaintiff.

133.    At all times material here, Defendants acted under color of state law by and through its agents, ostensible agents, and/or employees.

134.    A private citizen, including Plaintiffs, can seek relief under Section 1983 to enforce the ADA because the ADA has no exhaustion requirement and does not have an "unusually elaborate," "carefully tailored," and "restrictive" enforcement scheme. *Talevski*, 599 U.S. at 171, 187-88, 143 S. Ct. at 1450, 1459-60.

135.    The federal statutory rights prescribed by the ADA and violated by Defendants as set forth herein include the right to be free from discriminatory conduct.

136.    Defendants violated K.B.'s rights secured by ADA, by its actions and inactions which (a) subjected him to discrimination and denial of benefits, in violation of 28 C.F.R. § 35.130(a); (b) limited him in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

137.    The Defendants were on notice of the potential for K.B.'s psychological and physical injuries as set forth herein.

138.    The ADA confers onto K.B. an equal right to a safe education free from abuse, discriminatory treatment and/or loss of educational benefits.

20

139. The actions of the Defendants violated rights that the ADA guaranteed K.B. as a student with a disability.

140. Defendants acted intentionally, with deliberate indifference, with gross misjudgment, or with bad faith, to K.B.'s federally protected rights.

141. As a direct result of the actions of Defendants as set forth herein, Plaintiffs were caused to suffer the injuries and losses as described in this Complaint.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, attorney's fees, costs, and such other and further relief as this Court deems just and proper.

**Count IV**
**42 U.S.C. § 1983 for Enforcement of the Equal Protection Clause**
**of the Fourteenth Amendment**
**(K.B. v. all Defendants)**

142. Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

143. The Defendants are municipal entities and acted under color of state law, and/or there existed a close nexus between the State and the actions of the Defendants by and through their agents, ostensible agents, and/or employees thereby subjecting Defendants to suit pursuant to 42 U.S.C. § 1983.

144. The Defendants had a policy or custom of failing to appropriately hire and train their staff, contractors, and agents who worked with Plaintiff and who work with students with disabilities in the Brennen program and in the transportation to and from Brennen; failing to appropriately supervise staff, contractors, and agents who worked with Plaintiff and work with students with disabilities in the Brennen program and in the transportation to and from Brennan; and failing to appropriately supervise Plaintiff and other students with disabilities in the Brennen

program and in the transportation to and from Brennen.

145.    The Defendants failed to treat the disabled, nonverbal Plaintiff K.B. in the same manner in which it treats its non-disabled students in violation of the Equal Protection Clause of the Fourteenth Amendment.

146.    As outlined herein, the Defendants repeatedly subjected the Plaintiff to abuse in violation of the Equal Protection Clause.

147.    By repeatedly abusing him, the Defendants clearly had an intent to disadvantage Plaintiff.

148.    There was no rational basis for the Defendants' actions of verbally, physically, and psychologically abusing Plaintiff for a period of at least three months, as outlined herein.

149.    As a direct result of the actions of Defendants as set forth herein, Plaintiff was caused to suffer injuries as described in this Complaint.

**WHEREFORE**, Plaintiff K.B. demands judgment in his favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000); interest; costs; and such other and further relief as this Court deems just and proper.

**Count V**
**42 U.S.C. § 1983 for violation of Substantive Due Process under the Fourteenth Amendment for unlawful corporal punishment**
**(K.B. v. all Defendants)**

150.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

151.    The Defendants had a policy or custom of failing to appropriately hire and train their staff, contractors, and agents who worked with Plaintiff and who work with students with disabilities in the Brennen program and in the transportation to and from Brennen; failing to appropriately supervise staff, contractors, and agents who worked with Plaintiff and work with

22

students with disabilities in the Brennen program and in the transportation to and from Brennan; and failing to appropriately supervise Plaintiff and other students with disabilities in the Brennen program and in the transportation to and from Brennan.

152.    Excessive corporal punishment is actionable under the substantive component of the Due Process Clause of the Fourteenth Amendment.

153.    The Defendants' actions of verbally, physically, and psychologically abusing the Plaintiff K.B. for a period of months, as outlined herein, constituted corporal punishment.

154.    The corporeal punishment inflicted upon the Plaintiff was unnecessary, unwarranted, and excessive.

155.    The corporal punishment rises to the level of arbitrary and conscience-shocking behavior because it was months-long torture of a vulnerable young child with disabilities for no reason whatsoever.

156.    As a direct result of the actions of Defendants as set forth herein, Plaintiff was caused to suffer injuries as described in this Complaint.

**WHEREFORE**, Plaintiff K.B. demands judgment in his favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000); interest; costs; and such other and further relief as this Court deems just and proper.

### Count VI
**Negligence**
**(K.B. v. all Defendants)**

157.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

158.    Plaintiffs believe and therefore aver that Defendants knew or should have known that teachers, aides, paraprofessionals, drivers, or agents were abusing and/or neglecting K.B.;

Plaintiff's injuries were wholly foreseeable.

159. The Defendants both had mandatory, nondiscretionary policies prohibiting disability discrimination; unlawful corporal punishment; and the physical, verbal, and psychological abuse of students; yet these policies were ignored and/or unenforced by Defendants.

160. State and Federal law, including those cited herein, imposed mandatory, nondiscretionary prohibitions against the verbal, physical, and psychological abuse of children with disabilities.

161. Plaintiffs believe and therefore aver that Defendants acted with negligence and indifference to the health and safety of K.B., as well as others similarly situated, and are liable for one or more of the following acts or omissions amounting to negligent conduct:

a.      Failed to properly screen and hire and then properly train staff at Brennen;

b.      Failed to properly screen and hire and then properly train transportation providers;

c.      Failed to properly supervise teachers, aides, and paraprofessionals in their conduct at Brennen;

d.      Failed to properly train and supervise transportation providers;

e.      Failed to adequately protect K.B. from the behavior of the assailants;

f.      Failed to continually monitor overall safety of pupils;

g.      Failed to adopt, maintain and/or execute a competent discipline plan to protect students from employees and staff;

h.      Failed to properly provide for K.B.'s health, safety, and dignity; and

i.      Failed to institute appropriate policies to adequately monitor and report employee and/or staff misbehavior.

162. The Defendants both had a duty to protect K.B., violated that duty as set forth

24

herein, and their actions/inactions constituted negligence and indifference to the health and safety of K.B., as well as others similarly situated, and their acts or omissions were the proximate cause of his injuries which constitute negligence in these and other ways as discovery may reveal.

163.    As a proximate result of the above-described conduct, K.B. has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; have sustained poor performance in school; have incurred or will incur expenses for medical and psychological treatment, therapy, and counseling; and/or have suffered in other ways as discovery may reveal.

164.    Plaintiffs believe and therefore aver that Defendants have insurance that would cover the theories of liability pleaded in this Complaint.

165.    A governmental entity is exposed to liability for its negligent acts or omissions causing property damage or bodily injury in its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary. 10 Del. Code § 4012(1).

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, attorney's fees, costs, and such other and further relief as this Court deems just and proper.

### Count VII
### Gross Negligence

### (K.B. v. all Defendants)

166.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each

25

was set forth herein at length.

167.    Plaintiffs believe and therefore aver that Defendants knew, or with reckless indifference ignored warning signs that its teachers, aides, paraprofessionals, and/or transportation providers were abusing and neglecting K.B., and that if said employees and agents remained in close proximity to K.B., that they would pose a severe risk of harm to K.B.; Plaintiff's injuries were wholly foreseeable.

168.    If the teachers, aides, paraprofessionals, and transportation providers were adequately trained and supervised, they would not have posed an increased risk to commit acts of violence against K.B. and others similarly situated.

169.    Plaintiffs believe and therefore aver that Defendants acted with gross negligence, recklessness, and/or willful and wanton misconduct, and with reckless indifference to the health and safety of K.B., as well as others similarly situated, and are liable for one or more of the following acts or omissions amounting to negligence, gross negligence, recklessness, and/or willful and wanton misconduct:

a.    Failed to properly screen and hire and then to properly train staff at Brennen and transportation providers;

b.    Failed to properly supervise teachers, aides, and paraprofessionals in their conduct at Brennen and during transportation and created multiple opportunities for the abuse of a student;

c.    Failed to immediately make a mandatory report of the assailants' conduct toward K.B. to the Delaware Abuse Hotline;

d.    Failed to adequately protect K.B. from the aggressive behavior of the assailants;

e.    Failed to continually monitor overall safety of students;

f.    Failed to adopt, maintain and/or execute a competent and appropriate discipline

plan to protect students from employees and staff; and

g.    Failed to monitor and report employee misbehavior.

170.    Defendants had a duty to protect K.B., violated that duty as set forth herein, and its actions/inactions constituted gross negligence, recklessness, willful and wanton misconduct, and reckless indifference to the health and safety of K.B., as well as others similarly situated, and its acts or omissions were the proximate cause of K.B.'s injuries which constitute gross negligence, recklessness, and/or willful and wanton misconduct in these and other ways as discovery may reveal.

171.    As a proximate result of the above-described conduct, Plaintiffs have suffered and continue to suffer great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; have sustained poor performance in school; have incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling; and/or in other ways as discovery may reveal.

172.    Plaintiffs believe and therefore aver that Defendants have insurance that would cover the theories of liability pleaded in this Complaint.

173.    A governmental entity is exposed to liability for its negligent acts or omissions causing property damage or bodily injury in its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary. 10 Del. Code § 4012(1).

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendant for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest,

attorney's fees, costs, and such other and further relief as this Court deems just and proper.

### Count VIII
### Breach of Fiduciary Duty
### (K.B. v. all Defendants)

174.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

175.    A fiduciary relationship existed between Defendants, including its employees, agents, and officers, and K.B., in that K.B. reposed a special confidence in Defendants to the extent that K.B. and Defendants did not deal with each other on equal terms, due to K.B.'s disabilities and significant needs, and his dependence on and justifiable trust in Defendants and their personnel.

176.    Defendants clearly breached that duty through the actions as alleged herein.

177.    As a direct and proximate result of Defendants' breaches of fiduciary duty, K.B. was injured and suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; he was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained poor performance in school; has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling; and/or in other ways as discovery may reveal, all of which were wholly foreseeable.

178.    Plaintiffs believe and therefore aver that Defendants have insurance that would cover the theories of liability pleaded in this Complaint.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest,

attorney's fees, costs, and such other and further relief as this Court deems just and proper.

## Count IX
### Negligent Infliction of Emotional Distress
### (K.B. v. all Defendants)

179.    Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

180.    Defendants negligently caused severe emotional distress to K.B. through extreme and outrageous conduct.

181.    Defendants' actions and omissions were so outrageous in character and so extreme in degree as to go beyond the bounds of decency, and to be regarded as atrocious and intolerable in a civilized community.

182.    K.B.'s injuries were caused by Defendants' negligent acts and omissions with respect to the care, custody, control, hiring, training, and/or supervision of its teachers and staff.

183.    The Defendants' negligent acts and omissions with respect to the care, custody, control, hiring, training, and/or supervision of its teachers and staff created unreasonable risks of harm.

184.    The aforesaid injuries and harm to K.B. were caused by the negligent conduct and actual malice of the Defendants.

185.    Plaintiff's injuries were wholly foreseeable.

186.    A governmental entity is exposed to liability for its negligent acts or omissions causing property damage or bodily injury in its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary. 10 Del. Code § 4012(1).

187.    Plaintiffs believe and therefore aver that Defendants have insurance that would

29

cover the theories of liability pleaded in this Complaint.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, attorney's fees, costs, and such other and further relief as this Court deems just and proper.

### Count X
### Intentional Infliction of Emotional Distress
### (K.B. v. all Defendants)

188.   Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

189.   Defendants' conduct, by and through its teachers, staff, and/or agents as outlined herein, was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

190.   By and through its teachers, staff, and/or agents, Defendants intentionally or recklessly caused severe emotional distress to K.B. through extreme and outrageous conduct; Plaintiff's injuries were wholly foreseeable.

191.   The aforesaid injuries and harm to K.B. were caused by the gross negligence, wanton and willful misconduct, and intentional conduct of Defendants by and through its teachers, staff, and/or agents.

192.   Plaintiffs believe and therefore aver that Defendants have insurance that would cover the theories of liability pleaded in this Complaint.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, attorney's fees, costs, and such other and further relief as this Court deems just and proper.

## Count XI
## Loss of Consortium
### (S.B. v. all Defendants)

193.   Plaintiffs incorporate the averments of all paragraphs in this Complaint as if each was set forth herein at length.

194.   A loss of consortium claim is a distinct cause of action and is known as a "derivative" claim. *Oare v. York County*, 768 F.2d 503, 509 n.7 (3d Cir. 1985); *Darr Const. Co. v. W.C.A.B. (Walker)*, 552 Pa. 400, 408, 715 A.2d 1075, 1079-80 (1998); *see also McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003); *White v. City of Vineland*, 2022 WL 16637823 at *1 (D.N.J. Nov. 2, 2022) (Parents whose minor or unemancipated child has been injured as a result of unlawful state actions has a Section 1983 action for a denial of their due process interest in the companionship of their minor child).

195.   As a result of the Defendants' alleged discriminatory conduct, gross misjudgment, bad faith, and deliberate indifference, K.B. suffered damages, including, but not limited to, the physical and mental/emotional/psychological injuries and harms set forth herein, being denied equal access to education, all of which greatly affected and harmed his parent, S.B., mentally and emotionally.

196.   As a result of the Defendants' discriminatory conduct, gross misjudgment, bad faith, and deliberate indifference to known acts of physical, psychological, and verbal abuse, the Defendant violated Section 504, the ADA, and/or Section 1983 and state law.

197.   S.B. endured tremendous emotional pain and suffering, trauma to her personal relationships, as well as economic harm, all of which was wholly foreseeable.

198.   S.B. seeks redress for the loss and denial of her rights to the comfort, companionship and society (i.e., consortium) with her child as a consequence of the Defendants'

continual failures to comply with federal and state law as referenced herein.

199.    The harms Plaintiffs have experienced from the violations of federal and state law by the Defendants as described herein all occurred in violation of Section 504, the ADA, and/or Section 1983.

200.    S.B. has been and in the future will be deprived of the assistance and companionship of her child, all of which has been, continues to be, and in the future will be, to their great detriment and loss.

201.    Plaintiffs believe and therefore aver that Defendants have insurance that would cover the theories of liability pleaded in this Complaint.

**WHEREFORE**, S.B. demands judgment in her favor against Defendants for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs; and such other and further relief as this Court deems just and proper.

## VII.    Jury Demand

202.    Plaintiffs demand a jury of twelve persons on all claims herein stated.

**WHEREFORE**, the Plaintiffs respectfully request the Court order judgment in their favor as follows:

A.    assume jurisdiction over this action;

B.    declare the Defendants' actions and omissions to be violative of Section 504, the ADA, Section 1983, the U.S. Constitution, and Delaware law;

C.    award compensatory damages for the Defendants' violations of Section 504, the ADA, Section 1983, the U.S. Constitution, and Delaware law;

D.    order the Defendants to pay Plaintiffs their reasonable attorneys' fees and related costs; and

E.	grant such other relief as this Court deems proper.


Respectfully submitted,

/s/ *Caitlin E. McAndrews*
Caitlin E. McAndrews, Esq.,
Delaware ID No. 6179
McANDREWS, MEHALICK,
CONNOLLY, HULSE AND RYAN, P.C.
900 Foulk Road Suite 201
Wilmington, Delaware 19803
(302) 380-4975 ext. 243 (phone)
(302) 348-3799 (fax)
cmcandrews@mcandrewslaw.com
Attorney for Plaintiffs

33